IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A-J MARINE, INC.                    *

      Plaintiff,                    *

v.                                  *        Case No. 071642

CORFU CONTRACTORS, INC.             *

      Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION TO AMEND ANSWER AND COUNTERCLAIM
## AND ADD THIRD PARTY DEFENDANT

COMES NOW the defendant, Corfu Contractors, Inc., by counsel, and moves the Court of entry of an Order granting it leave to file an amended answer and counterclaim, and to add Peter Kalos as a third party defendant, and in support thereof states as follows:

1.      Corfu Contractors, Inc., ("Corfu") is the general contractor on a project known as the Washington Metropolitan Area Service Authority, Contract No. FN3031, "Scour Countermeasure Installation for Potomac River Metrorail Bridge, Piers District of Columbia." ("the Project").

2.      On August 14, 2007, the plaintiff, A-J Marine, Inc. ("AJ Marine") filed a Complaint in Superior Court of the District of Columbia alleging breach of contract against defendant Corfu Contractors, Inc. and alleging a bond claim against The Ohio Casualty Insurance Company allegedly arising from work performed on the Project.

3.      AJ Marine alleges that Corfu breached a subcontract agreement dated October 24, 2006 (the "AJ Marine subcontract") by failing to pay $253,380.50 allegedly

1

earned by AJ Marine for work on the Project and by refusing to forfeit a urbidity curtain to AJ Marine.

4.    On September 12, 2007, the case was removed to the United States District Court for the District of Columbia.

5.    In its Answer, Corfu admitted having entered into the subcontract agreement with AJ Marine but denied having breached that Contract.

6.    In a Counterclaim filed contemporaneously with the Answer, Corfu alleges that AJ Marine breached the subcontract and seeks recovery of the additional costs and expenses it suffered as a result of AJ Marine's breach.

7.    The admissions and denials contained in the Answer and the allegations contained in the Counterclaim were provided to counsel by Veron Lee Kalos.

8.    Veron Lee Kalos worked in the Corfu office and was the point of contact with counsel for the AJ Marine job and most other projects involving Corfu.

9.    In fact, unbeknownst to counsel, Kalos was never a Corfu employee. Instead, counsel has now been advised that she worked in the office as a personal favor to Corfu's owners, Chris Kollas and Giovana Esposito.

10.    Kalos and her husband, Peter Kalos, are the officers and owners of Brickwood Contractors, Inc. ("Brickwood").

11.    Pursuant to a subcontract agreement dated March 8, 2005, Corfu actually subcontracted all work on the Project to Brickwood Contractors, Inc.  (the "Brickwood subcontract").

12.    The Brickwood subcontract was signed by Chris Kollas, Corfu's president, and by Peter Kalos, Brickwood's president.

13.     The parties contemplated that Brickwood would perform all of Corfu's work on the Project and that Peter Kalos would act as the project manager in dealing with WMATA.  Corfu understood, however, that Brickwood would self perform its work. No authority to subcontract work was sought by Brickwood from Corfu.

14.     Unbeknownst to Corfu, Peter Kalos signed a subcontract agreement with AJ Marine, purportedly on behalf of Corfu.  Lee Kalos did not disclose to counsel the fact that Peter had signed the contract but had not been authorized to do so.

15.     Subcontractors on the Project, including AJ Marine, dealt entirely with Peter and/or Veron Lee Kalos, not Corfu.

16.     In late 2007/early 2008 certain disputes arose between Corfu and Brickwood.

17.     As a result of these disputes, Veron Lee Kalos no longer works in the Corfu office, has no contact with Kollas or Esposito, and is believed to have possession of various documents related to this Project.

18.     After Kalos stopped working in the Corfu office, and in the course of investigating the ongoing disputes between Corfu and Brickwood, Corfu learned that Peter Kalos signed the AJ Marine contract and other documents as if he was a representative of Corfu.

19.     Although Peter Kalos was given the title of project manager on the Project, he did not have, nor has he ever had, the authority to subcontract work on Corfu's behalf.

20.     Corfu has also learned of several documents related to the Project which purport to be the signature of Chris Kollas, but are not.

21.    Corfu requests leave to amend its Answer and Counterclaim and to join Peter Kalos as a third party defendant to address these newly discovered facts. Specifically, Corfu requests leave to amend its Answer to deny that it executed a subcontract agreement with AJ Marine and to assert the affirmative defense of lack of privity of contract.  Corfu further requests that it be allowed to amend its Counterclaim to conform with the amended answer and to add Peter Kalos as a third party defendant on the ground that any liability Corfu may have under the contract should be born by Peter Kalos.  The amended answer and counterclaim are attached hereto as Exhibit A.  The summons and third party complaint are attached hereto as Exhibit B.

22.    Rule 15(a) states that leave to amend "shall be freely given when justice so requires."

23.    AJ Marine will not be prejudiced if Corfu is allowed to amend its Answer and Counterclaim and join Peter Kalos as a third party defendant.

24.    Additionally, no trial date has been set in this case and time remains to complete discovery.

WHEREFORE, the undersigned requests that this Court enter an order granting the Defendant, Corfu Contractors, Inc., leave to file an Amended Answer and Counterclaim and join Peter Kalos as a third party defendant and for such other and further relief as the Court may deem necessary and proper.

Respectfully submitted,

/s/ Stephen J. Annino_____
Stephen J. Annino, (DC Bar 390252)
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax
*Counsel for Corfu Contractors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading was sent on the 5th

day of June, 2008 via first class, postage prepaid mail to the following:

Christopher L. Grant, Esq.
1250 Connecticut Ave, NW
Suite 200
Washington, DC 20036

Cynthia E. Rodgers-Waire, Esq.
Nicole Velasquez, Esq.
Whiteford Taylor & Preston, LLP
7 St. Paul Street
Baltimore, Maryland 21202

/s/ Stephen J. Annino_____
Stephen J. Annino

P:\Docs\Corfu Contractors\AJ Marine\Pleadings\MotiontoAmend.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A-J MARINE, INC.                         *

     Plaintiff,                         *

v.                                       *          Case No. 071642

CORFU CONTRACTORS, INC.                  *

     Defendant.                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## AMENDED ANSWER OF CORFU CONTRACTORS, INC.

Corfu Contractors, Inc., ("Corfu"), by its undersigned counsel, files its Amended

Answer to the Complaint filed against it by A-J Marine, Inc. ("AJ Marine") and states in

response thereto as follows:

    1.     Corfu lacks sufficient knowledge or information to form a belief as to the

truth or accuracy of the allegations in paragraph 1 and therefore denies the same.

    2.     Corfu admits the allegations in the first sentence of paragraph 2 of the

Complaint and denies the remaining allegations.

    3.     Corfu admits the allegations of paragraph 3 of the Complaint.

    4.     Corfu admits that this action was originally filed in Superior Court for the

District of Columbia and denies the remaining allegations of paragraph 4.

    5.     The responses of paragraphs 1 through 4 of the Complaints set forth

hereinabove are incorporated herein by reference, as Corfu's response to the allegation of

paragraph 5.

    6.     The allegations of paragraph 6 are denied.

    7.     The allegations of paragraph 7 are denied.

1



8.      The allegations of paragraph 8 are denied.

9.      The allegations of paragraph 9 are denied.

10.     The allegations of paragraph 10 are denied.

11.     The allegations of paragraph 11 are denied.

12.     The allegations of paragraph 12 are denied.

13.     The responses of paragraph 1 through 12 set forth hereinabove are incorporated herein by reference as Corfu's response to paragraph 13.

14.     The allegations in the first 3 sentences of paragraph 14 are admitted.  The allegations in the last sentence of paragraph 14 are denied.

15.     The allegations set forth in the first 2 sentences of paragraph 15 are admitted.  The remaining allegations of paragraph 15 are denied.

16.     The allegations of paragraph 16 are denied.

17.     Any allegations specific of the Complaint not specifically admitted hereinabove are denied.

## AFFIRMATIVE DEFENSES

18.     There is no privity of contract between Corfu and A.J. Marine.

19.     AJ Marine's claims are barred in whole or in part by the terms of the payment bond provided in this action.

20.     AJ Marine's claims have been waived or AJ Marine is otherwise estopped from making the claims it asserts in this action.

21.     The claims of AJ Marine are barred by its failure to mitigate damages.

22.     The contract upon which AJ Marine seeks to recover is void and/or is unenforceable as a result of a mutual mistake of fact.

AND NOW having fully responded to the Complaint the undersigned prays that the same be dismissed with an award to it of costs on this behalf expended.

## AMENDED COUNTERCLAIM OF CORFU CONTRACTORS, INC.

Corfu Contractors, Inc., ("Corfu"), by its undersigned counsel, files this Amended Counterclaim against A-J Marine, Inc. ("AJ Marine") and in support thereof states as follows:

1.      Pursuant to a subcontract agreement, AJ Marine agreed to supply certain work and material in connection with a project for the Washington Metropolitan Area Transit Authority ("WMATA"), Contract No. FN3031, scour-counter measure installation for Potomac River Metro Rail Bridge, Piers District of Columbia (the "Project"). A copy of the subcontract agreement is attached to the Complaint filed by AJ Marine in this matter (hereafter "the Subcontract Agreement").

2.      Corfu was the general contractor on the Project and subcontracted all of its work on the Project to Brickwood Contractors, Inc.

3.      Brickwood was responsible for paying any and all subcontractors necessary to complete work on the Project.

4.      Brickwood's president, Peter Kalos, executed the subcontract with AJ Marine.  Although the subcontract indicates that he is signing on behalf of Corfu, Kalos did not have that authority.

5.      However, to the extent that it is determined that Corfu entered into the subcontract agreement with AJ Marine, AJ Marine has breached that subcontract.

6.      Pursuant to the terms of the subcontract agreement, the work of AJ Marine was to include providing an "insurance certificate in compliance with WMATA contract requirements at page 172 to 174." A true copy of the WMATA contract requirements for insurance referenced in the subcontract agreement is attached hereto as **Exhibit 1.**

7.      The subcontract agreement further provided in Art. 5 that "the subcontractor agrees to obtain and pay for the following insurance overages: worker man's compensation, public liability, property damage, and any other insurance coverage which may be necessary as required by the owner, contractor, or state law per contract specifications and county requirements.

8.      Prior to the commencement of performance of AJ Marine, AJ Marine was required to submit evidence of appropriate insurance as required by the terms of its contract and Prime Contract.

9.      AJ Marine repeatedly failed to provide the necessary evidence of insurance coverage, even after notice and demand by Brickwood, Corfu's subcontractor. AJ Marine failed after notice and demand to provide the necessary insurance coverage and subsequently demobilized from the project and refused to perform any work on the project.

10.     At the time AJ Marine demobilized, it had not performed any work which was of benefit to the project.

11.     As a result of AJ Marine's failure and refusal to perform, Corfu incurred significant cost and expense by reason of the need to re-procure a subcontractor to perform the work which AJ Marine was required to perform, additional cost and expense arising out of AJ Marine's delay and disruption of Corfu's work on the project and

additionally cost and expense involving additional mobilizations to the project which were not contemplated.

12.    To the extent that the subcontract is determined to be binding on Corfu, AJ Marine's actions were a breach of the contract between the parties and as a result of that breach Corfu has sustained damages not yet known but expected to at least $600,000.00

WHEREFORE, on account of the foregoing Corfu Contractors, Inc. requests that this Court enter judgment against AJ Marine, Inc. in the sum of $600,000.00 together with interest thereon and the costs of these proceedings.

Respectfully submitted,

Stephen J. Annino, (DC Bar 390252)
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax
*Counsel for Corfu Contractors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading was sent on the _____

day of _____, 2008 via first class, postage prepaid mail to the following:

        Christopher L. Grant, Esq.
        1250 Connecticut Ave, NW
        Suite 200
        Washington, DC 20036

        Cynthia E. Rodgers-Waire, Esq.
        Nicole Velasquez, Esq.
        Whiteford Taylor & Preston, LLP
        7 St. Paul Street
        Baltimore, Maryland 21202

                              _____
                              Stephen J. Annino

P:\Docs\Corfu Contractors\AJ Marine\Pleadings\amended answer and counterclaim.doc

of the Contract. Maximum primary voltage shall be 600 volts, unless otherwise approved. Lighting equipment shall be of the type and quantity needed to provide illumination of all project areas. Materials for and installation of temporary services shall comply with OSHA requirements and with the minimum requirements of the technical specifications.

## 2.13    INDEMNIFICATION AND INSURANCE

### 2.13.1  INDEMNIFICATION

The Contractor will save and keep harmless and indemnify the Authority against any and all liability claims, and the cost of whatsoever kind and nature (including legal expenses) arising or alleged to have arisen from an injury, including bodily injury to or death of person or persons, and for loss or damage occurring in connection with this Contract, and or any acts in connection with activities to be performed under this contract resulting in whole or in part from the acts, errors or omissions of the Contractor, any subcontractor, employee, agent or representative of the contractor.



### 2.13.2  INSURANCE

The Contractor will provide evidence of its commercial insurance coverage(s),  prior to notice to proceed being given, for the following exposures:

**A.    Workers' Compensation:**  Policy complying with the requirements of the statutes of the jurisdiction(s) in which the work will be performed, and if there is any exposure to any of the Contractor's subcontractor personnel with the U.S. Longshoremen's and Harbor Workers' Act, Jones Act or Admiralty Laws and the Federal Employers' Liability Act. The coverage under such an insurance policy or policies shall have not less than:

Worker's Compensation:  STATUTORY

Employers' Liability :  Each Accident  **$1,000,000**
                Disease Policy  Limit:  **$1,000,000**
                Disease - Each Employee  **$1,000,000**

**B.    Commercial General  Liability Insurance:** An insurance policy covering the liability of the Contractor for all work or operations under or in connection with this referenced Contract and all obligations assumed by the Contractor under this Contract. Products Liability and Completed Operations and Contractual Liability must be included, in addition to coverage for explosion, collapse and underground hazards, wherever required.

The coverage under such an insurance policy or policies shall have  limits not less than:

Bodily Injury and Property Damage Liability $1,000,000 / 2,000,000 (per occurrence / aggregate)

Premises Medical Payments          $5,000
Fire Legal Liability                  $1,000,000
Personal & Advertising Injury        $1,000,000


EXHIBIT

<u>WMATA must be included as an additional insured under the Commercial General Liability insurance with respect to all activities under the Contract.</u>

C.    **Automobile Liability Insurance** : An insurance policy covering the use of all owned, non-owned, hired, rented or leased vehicles bearing, or under the circumstances which they are being used, required by the Motor Vehicle Laws of The District of Columbia, Maryland or Virginia, to bear license plates and not covered under the Contractor's aforementioned Commercial General Liability Insurance.

The coverage under such policy or policies shall limits not less than:

Bodily Injury and Property Damage Liability
$2,000,000 Combined Single Limit

<u>WMATA must be included as an additional insured under the coverage for Automobile Liability Insurance with respect to all work performed under this contract.</u>

2.13.3 SPECIAL PROVISIONS FOR INSURANCE (revised 01/01/2001):

A.    The contractor shall forward to the Contracting Officer for approval a certificate or certificates, issued by the insured(s), of the insurance required under the foregoing provisions, including special endorsements. Such certificate(s) shall be in a form satisfactory to WMATA and shall list the various coverages and limits. <u>Insurance companies providing the coverage must be acceptable to WMATA, rated by A.M. Best and carry at least an "A" rating.</u> In addition to any provisions herein before required; a provision of such insurance policies shall not be changed or cancelled and they will be automatically renewed upon expiration and continued in full force and effect until final acceptance by WMATA of all work covered by the contract, unless WMATA is given thirty (30) days written notice before any change or cancellation is made effective. The Contractor shall directly furnish the Contracting Officer with a certified copy of each insurance policy upon request.

B.    All insurance shall be procured from insurance or indemnity companies acceptable to WMATA and licensed and authorized to conduct business in the District of Columbia, State of Maryland and Commonwealth of Virginia. WMATA approval or failure to disapprove insurance furnished by the Contractor shall not release the Contractor of full responsibility for liability for damage and accidents.

C.    If at any time the above required insurance policies should be cancelled, terminated or modified so that the insurance is not in full-force and effect as required herein the Contracting Officer may terminate this contract for default or obtain insurance coverage equal to that required herein, the full cost of which shall be charged to the Contractor and deducted from any payments due the Contractor.

D.    The Contractor shall require each subcontractor, at all tiers to provide evidence of insurance coverage specified herein and such evidence of coverage shall be

provided to the Contractor prior to commencement of work. Such coverage shall remain in full force and effect during the performance of work on this project.

E.      Any contract of insurance or indemnification naming WMATA, the United States of America, or any of the departments, agencies, administrators or authorities as an insured shall be endorsed to provide that the insurer will not contend in the event of any occurrence, accident, or claim that WMATA or the United States of America, et al, are not liable in tort by virtue of the fact of being governmental instrumental instrumentalities or public quasi-public bodies.

F.      In the event the required certificates of insurance as specified herein are not furnished within ten calendar days after the date of award of the contract, the Contracting Officer may issue the Notice to Proceed and contract time will start upon Contractor's receipt of Notice to Proceed. If the contract includes site work, the Contractor shall not be permitted to work at the site until all required insurance certificates have been received.

G.      Notice of Cancellation, nonrenewable or material change in coverage shall be provided to WMATA at least thirty (30) days prior to action. The words " endeavor to" and "but failure to" (to the end of sentence) are to be eliminated from the notice of Cancellation provision on standard ACORD certificates.

2.13.4  NOT USED

2.14    WORK ON RAILROAD PROPERTY - NOT USED

2.15    SAFETY / ENVIRONMENTAL REQUIREMENTS
A.      The Contractor shall be responsible for ensuring compliance with the most stringent provisions of the applicable occupational safety and health statutes and regulations of the District of Columbia, State of Maryland, Commonwealth of Virginia or political subdivision in which the work is being performed, and the Department of Labor OSHA standards. In addition, the Contractor must comply with the following documents: the WMATA Construction Safety and Environmental Manual; the WMATA System Safety Program Plan; the Metrorail Safety Rules and Procedures Handbook (for contracts in which work is performed on, or interfaces with the Metrorail System); and the Department Bus Service Employee Handbook (for contracts in which work is performed on, or interfaces with the Metrobus System or facilities); Consolidated Plan prepared by WMATA for each Bus Division and Rail Yard in order to minimize the potential for pollutant discharge to the environment; the National Institute for Occupational Safety and Health (NIOSH) guidelines; the American Conference of Governmental Industrial Hygienists (ACGIH) guidelines; the American National Standards Institute (ANSI) guidelines; and the U.S. Army Corps of Engineers Safety and Health Requirements Manual. The contractor shall also be responsible for compliance with applicable National Fire Protection Association (NFPA) Standards 13, 14, 24, 25 and 130. Further, the Contractor shall ensure that all methods of performing the work do not involve danger to the personnel employed thereon, the public, or private property, whether or not these methods are cited or indicated in the

AO 441 (Rev. DC - 9/25/03) Third Party Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

PLAINTIFF

## A-J Marine, Inc.

V. DEFENDANT AND THIRD PARTY PLAINTIFF

### THIRD PARTY SUMMONS IN A
### CIVIL ACTION

## Corfu Contractors, Inc.

Case Number:    **071642**

V. THIRD PARTY DEFENDANT

## Peter Kalos

To: Name and address of Third Party Defendant

```
Peter Kalos
13214 Triple Crown Loop
Gainesville, VA 20155
```

**YOU ARE HEREBY SUMMONED** and required to serve on

| PLAINTIFF'S ATTORNEY (name and address) | DEFENDANT AND THIRD-PARTY PLAINTIFF'S ATTORNEY (name and address) |
|---|---|
| Christopher L. Grant, Esq. 1250 Connecticut Ave., NW Suite 200 Washington, DC 20036 | Stephen J. Annino Kasimer & Annino, P.C. 7653 Leesburg Pike Falls Church, VA 22043 |

an answer to the third-party complaint which is served on you with this summons, within _____**20**_____ days after the service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default may be taken against you for the relief demanded in the third-party complaint. There is also served on you with this summons a copy of the complaint of the plaintiff. You have the option of answering or not answering the plaintiff's complaint, *unless* (1) this is a case within Rule 9(h) Federal Rules of Civil Procedure, *and* (2) the third-party plaintiff is demanding judgment against you in favor of the original plaintiff under the circumstances described in Rule 14(c) Federal Rules of Civil Procedure, in which situation you are required to make your defenses, if any, to the claim of plaintiff as well as to the claim of the third-party plaintiff. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

## Nancy Mayer-Whittington

CLERK

DATE

(By) DEPUTY CLERK

EXHIBIT

B

AO 441 (Rev. DC - 9/25/03) Third Party Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER | TITLE |

*Check one box below to indicate appropriate method of service*

G   Served personally upon the third-party defendant.  Place where served: _____

_____

G   Left copies thereof at the third-party defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

     Name of person with whom the summons and complaint were left: _____

G   Returned unexecuted: _____

_____

_____

G   Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
             Date                 *Signature of Server*

                       _____
                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A-J MARINE, INC.                    *

     Plaintiff,                   *

v.                                  *        Case No. 071642

CORFU CONTRACTORS, INC.             *

     Defendant                    *
     Third Party Plaintiff
                     *

v.                                  *

PETER KALOS                         *

     Third Party Defendant        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## THIRD PARTY COMPLAINT

1.     Corfu Contractors, Inc., is the general contractor on a project known as the Washington Metropolitan Area Service Authority, Contract No. FN3031, "Scour Countermeasure Installation for Potomac River Metrorail Bridge, Piers District of Columbia." ("the Project").

2.     Peter Kalos acted as Corfu's project manager on the project.  He is also the president of Brickwood Contractors, Inc. ("Brickwood").

3.     The Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367(b).

4.     On August 14, 2007, the plaintiff, A-J Marine, Inc. ("AJ Marine"), filed a Complaint in Superior Court of the District of Columbia alleging breach of contract against defendant Corfu Contractors, Inc. and alleging a bond claim against The Ohio

Casualty Insurance Company (the "Complaint").   A copy of the Complaint is attached hereto as Exhibit 1.

5.      On September 12, 2007, the case was removed to the United States District Court for the District of Columbia.

6.      AJ Marine alleges that Corfu breached a subcontract agreement dated October 24, 2006 (the "AJ Marine subcontract") by failing to pay $253,380.50 allegedly earned by AJ Marine for work on the Project and by refusing to forfeit a turbidity curtain to AJ Marine.

7.      Pursuant to a subcontract agreement dated March 8, 2005, Corfu subcontracted all work on the Project to Brickwood Contractors, Inc.  (the "Brickwood subcontract").  A copy of that subcontract is attached hereto as Exhibit 2.

8.      The parties contemplated that Brickwood would perform all of Corfu's work on the Project and Kalos would be responsible for all administrative duties with WMATA on the Project.  Kalos was granted the authority to deal with WMATA on Corfu's behalf but did not have the authority to sign subcontracts on behalf of Corfu.

9.      Corfu has paid Brickwood for all work performed on the Project.

10.     When executing the AJ Marine subcontract, Peter Kalos did not sign as Brickwood's president.  Instead, the subcontract indicates that he represented that he was signing on Corfu's behalf.  A copy of the AJ Marine subcontract was attached to the original Complaint.

11.     Although Kalos was given the title of project manager on the Project for purposes of dealing with WMATA, he did not have, nor has he ever had, the authority to sign subcontracts on Corfu's behalf.

12.    In signing the AJ Marine subcontract Kalos exceeded his authority and breached his limited agency agreement with Corfu.  Kalos further breached his limited agency agreement by failing to convey all relevant information concerning his duties to Corfu, withholding information, and otherwise acting to prejudice Corfu's rights and obligations.  In the alternative, Kalos failed to properly advise Corfu as to insurance requirements on the Project and thereby interfered with any contract which Corfu may be held liable for in this matter.

13.    The only claim alleged against Corfu in the Complaint is that it breached the subcontract signed by Peter Kalos without Corfu's knowledge or consent.

14.    To the extent Corfu is determined to be liable in this matter, Kalos is liable to Corfu as a result of his breaches of his agreements with Corfu.

WHEREFORE, Corfu Contractors, Inc. requests that judgment be entered against third-party defendant, Peter Kalos for all amounts that may be adjudged against defendant Corfu Contractors, Inc. in favor of plaintiff A-J Marine, Inc., plus interest, costs, and attorneys fees.

Respectfully submitted,

Stephen J. Annino, (DC Bar 90252)
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax
*Counsel for Corfu Contractors, Inc.*

12/01/2010   17:20    4345295850                    MIKE KOLLAS                    PAGE   06

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division

A-J MARINE, INC.,                              *

    Plaintiff                              *

                        *        Civil Action No. _____

v.                                             *

CORFU CONTRACTORS, INC.,                       *
                        *

Serve: Mr. Christos Kollas                     *
      2405 Oakmont Court                      *
      Oakton, VA 22124-1000                   *
                        *

THE OHIO CASUALTY                              *
INSURANCE COMPANY,                             *
                        *

Serve: Corporation Service Company             *
      1090 Vermont Ave., NW, Suite 430        *
      Washington, D.C. 20005                  *
                        *

    Defendants.                                *

RECEIVED
Civil Clerk's Office
AUG 14 2007

0005614-07

## COMPLAINT

    COMES NOW plaintiff A-J Marine, Inc. and submits its claim for breach of contract against defendant Corfu Contractors, Inc. and its claim against The Ohio Casualty Insurance Company for payment upon a surety bond.

    1. Plaintiff A-J Marine, Inc. is a corporation organized under the laws of the state of Maryland with its principal office located at 11101 Cedar Lane, Kingsville, Maryland 21087. A-J Marine, Inc. is qualified to do business in the District of Columbia.

    2. Defendant Corfu Contractors, Inc. is a corporation organized under the laws of the state of Virginia with its principal office located at 2405 Oakmont Court, Oakton, Virginia 22124-1000. Corfu Contractors, Inc. is not qualified to do business in the



District of Columbia. Corfu Contractors, Inc. may be served with process by service upon its principal, Mr. Christos Kollas, 2405 Oakmont Court, Oakton, VA 22124-1000.

3. Defendant The Ohio Casualty Insurance Company is an insurance company organized under the laws of the state of Ohio with offices located at 136 North Third Street, Hamilton, Ohio 45025. This defendant may served with process by service upon its registered agent for service of process, Corporation Service Company, 1090 Vermont Avenue, NW, Suite 430, Washington, D.C. 20005.

4. The Court's jurisdiction is founded upon D.C. Code §11-921. The Court's personal jurisdiction of each of the defendants is founded upon D.C. Code §13-423(a)(1), the defendants each having transacted the business which is the subject of this action in the District of Columbia.

## Count One: Breach of Contract

5. The foregoing paragraphs 1 through 4 are incorporated as a part of this Count One as if fully set forth herein.

6. A-J Marine, Inc. entered into a written subcontract (hereinafter, "the Subcontract") with Corfu Contractors, Inc. on or about October 24, 2006. The Subcontract provided for the performance of certain work by A-J Marine, Inc. on a project of the Washington Metropolitan Area Service Authority, Contract No. FN3031, "Scour Countermeasure Installation for Potomac River Metrorail Bridge, Piers District of Columbia." A copy of the Subcontract is attached hereto as Exhibit A.

7. The Subcontract provided inter alia that A-J Marine, Inc. would provide a minimum of a three-man crew to work 40 hours per week to perform mechanical dredging and placement of stone. The Subcontract provided that Corfu Contractors, Inc.

"will supply all materials, dredge barges, rock barges, long reach excavator, moorings, #6 sectional barges, spuds, spud wells, fuel tanks, fuel, personnel boat" and other facilities.

8. The Subcontract provided that A-J Marine, Inc. would receive monthly compensation of $85,371.00, plus a mobilization fee of $5,000.00 and a demobilization fee of $5,000.00.

9. The Subcontract provided that A-J Marine, Inc. would mobilize the week of October 23, 2006 and complete its work in accordance with "Contract Schedules," which provided for contract completion on or before July 17, 2007. "No work is allowed between March 1 and June 30."

10. Upon signature of the Subcontract on October 24, 2007, A-J Marine, Inc. immediately mobilized, having been informed that Corfu Contractors, Inc.'s material barges would arrive at the jobsite during the first week of November. Corfu Contractors failed to deliver its dredge material barges and stone material barges loaded with stone. A-J Marine's personnel, material and equipment waited for Corfu Contractors to deliver its barges until early December. On December 13, A-J Marine moved its equipment to a safer location, protected from the winter weather, and continued to wait for Corfu Contractors to deliver its barges. Thereafter Corfu Contractors wrongfully abandoned the Subcontract.

11. During the course of its performance of the Subcontract, A-J Marine, Inc. earned the sum of $253,380.50 in accordance with the Subcontract's provisions for payment. Corfu Contractors has wrongfully failed and refused to pay that sum or any sum to A-J Marine, Inc. The sum due A-J Marine, Inc. is calculated as shown on the ten invoices which are attached hereto as Exhibit B.

12. In accordance with the Subcontract, A-J Marine provided a turbidity curtain 4 feet to 6 feet in depth at no charge, "however, Corfu has ordered heavier duty and deeper curtain which will be forfeited to A-J Marine, Inc. at the completion of the project." The Contract Completion Date of July 17, 2007 has passed, yet Corfu has not forfeited the heavier duty and deeper turbidity curtain to A-J Marine. The value of the curtain is approximately $5000.00.

Wherefore, plaintiff A-J Marine, Inc. prays that the Court enter judgment in its favor and against Corfu Contractors, Inc. in the amount of $258,380.50, plus all costs of this action and a reasonable fee for its attorney.

### Count Two: Breach of Payment Bond

13. The foregoing paragraphs 1 through 12 are incorporated as a part of this Count Two as if fully set forth herein.

14. As part of its obligation under its prime contract with the owner of the project, the Washington Metropolitan Area Service Authority, Corfu Contractors furnished a surety bond (hereinafter, "the Payment Bond") for the protection of its subcontractors. A copy of the bond is attached hereto as Exhibit C. The Payment Bond was issued by defendant The Ohio Casualty Insurance Company (hereinafter, "the Surety"). Section 3.c of the bond requires that action be filed in the courts of the District of Columbia.

15. A-J Marine, Inc. through an attorney at law made a written claim against the Payment Bond in or about January 2007. A-J Marine, Inc. reiterated its claim against the Payment Bond through an attorney on April 30, 2007. A-J Marine, Inc. has satisfied all

conditions precedent to this action. The Surety has failed and refused to pay the sum due under the Payment Bond.

16. The Surety's failure to pay the claim against the Payment Bond is a breach of the obligations of the bond.

Wherefore, plaintiff A-J Marine, Inc. prays that the Court enter judgment in its favor and against The Ohio Casualty Insurance Company in the amount of $258,380.50, plus all costs of this action and a reasonable fee for its attorney.

Christopher L. Grant
Attorney at Law
D.C. Bar No. 396132
1250 Connecticut Ave., NW.
Suite 200
Washington, D.C. 20036
(202) 261-3515
lawgrant@mindspring.com

THIS AGREEMENT, made this ___24th___ day of ___OCTOBER___ A.D. _2006_ by and between _____ CORFU CONTRACTORS, INC. hereinafter called the Contractor, and ___A-J MARINE, INC.___ hereinafter called the ubcontractor.

For the consideration hereinafter named, the Subcontractor agrees with the Contractor, as follows:

ARTICLE 1 WORK:  Dredging and Placement of Stone

At: Potomac River Metro Rail Bridge Piers
_____ADDRESS_____

For: Washington Metropolitan Area Service Authority, 600 Fifth Street, NW., Washington, DC 20001
_____OWNER OR OWNERS_____

according to the general conditions of the contract, as per the drawings and specifications, and amendments and/or changes to either (details thereof to be supplied as needed) prepared and identified by Washington Metropolitan Area Service Authority, Contract No. FN3031, Scour Countermeasure Installation for Potomac River Metrorail Bridge, Piers District of Columbia Owner/Architect, and to the full satisfaction of said Owner/Architect.

ARTICLE 2. TIME: The Subcontractor agrees to promptly begin work as soon as notified by the Contractor, and to complete the work as follows:  Mobilize the week of October 23, 2006 and complete work in Accordance with Contract Schedules. Contract Completion Date is July 17, 2007.  No work is allowed between March 1 and June 30.

ARTICLE 3. EXTRAS: No deviations from the work specified in the contract will be permitted or paid for unless a written extra work or change order is first agreed upon and signed as required.

ARTICLE 4. ASSIGNMENT: No assignment of this subcontract agreement is permitted without prior written permission from the Contractor.

ARTICLE 5. INSURANCE: The Subcontractor agrees to obtain and pay for the following insurance coverages: Workmen's Compensation, Public Liability, Property Damage, and any other insurance coverage which may be necessary as required by the Owner, Contractor, or State Law, Per Contract Specifications and County Requirements.

ARTICLE 6. TAXES: The Subcontractor agrees to pay any and all Federal, State, or Local Taxes which are, or may be, assessed upon the material and labor which he furnishes under the contract.

IN CONSIDERATION WHEREOF, the Contractor agrees that he will pay the Subcontractor, in ___Monthly___ ~~Progress~~ payments, the sum of Per Attached Schedule of Billing Rates _____ Dollars ($_____) ~~for materials and work,~~ said amount to be paid as follows:  ~~Ninety~~ per cent (~~90~~ %) of all labor and ~~material which has been fixed in place~~ by the Subcontractor, to be paid ~~on or about the~~ Monthly ~~of the following month, except the final payment,~~ which the Contractor shall pay to the Subcontractor within ~~45~~ days after the Subcontractor shall have completed his work to the full satisfaction of the Architect of Owner.

The Contractor and the Subcontractor for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

IN WITNESS WHEREOF, they have executed this agreement the day and year first above written.

WITNESS

WITNESS

A-J MARINE, INC.
SUBCONTRACTOR

MD License #
STATE LICENSE NO.:

CORFU CONTRACTORS, INC.
CONTRACTOR

BY:                    10/24/06

Exhibit A

# SUBCONTRACT AGREEMENT

**Contractor:**
Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, Virginia 22124-1000
CorfuContractors@aol.com
703-350-0617
703-743-2175 fax

**Subcontractor:**
A-J Marine, Inc.
11101 Cedar Lane
Kingsville, MD 21087
AJMarine@erols.com
410-592-8157
410-592-8158 fax

P.K. 10-24-06
JDN 10-24-06

Work to Include:

Minimum Three (3) Man Crew On-site Working at All Times   46 hrs/wk

Dredging as Specified and Shown on Drawings, Including Slope to Existing Grade (Testing and Disposal of Dredge Spoil to be Performed by Others). Owner estimates maximum of 9,158 CY per drawings. As specified, dredging of non-hazardous material is in the contract. If material is hazardous, A-J Marine will submit a proposal for the change.

Dredging will not exceed owner's maximum estimate of:
    1,568 Cubic Yards at Pier #13
    3,996 Cubic Yards at Pier #14
    1,930 Cubic Yards at Pier #15
    1,664 Cubic Yards at Pier #16

P.K. 10-24-06
JDN 10-24-06
P.K. 10-24-06
J.D.N 10-24-06

Installation of Geotextile Fabric
Installation of Filter Blanket (AASHTO #1 and #8)
Installation of Riprap (VDOT Class I or VDOT Class II)
Installation of Used Turbidity Curtain Around Your Work Area (Corfu Will Maintain).
10-24-06 P.K. JDN 10-24-06
Transportation and Anchoring of Dredge Spoil Storage Vessel to Gravelly Point, or to an Alternate Location Near the Job Site, in Preparation for Transport to the Disposal Site by Others.

Equipment and Material Provided by General Contractor:

Geotextile Fabric
330 Tons AASHTO #1(234 CY Maximum Shown on Drawings, at 105 pounds per CF)*
500 Tons AASHTO #1 Modified for Piers #14 and #15 (354 CY Maximum Shown on Drawings, at 105 pounds per CF)*
850 Tons AASHTO #8 (588 CY Maximum Shown on Drawings, at 105 pounds per CF)*
2,700 Tons VDOT I Riprap (1,850 CY Maximum Shown on Drawings, at 107 pounds per CF)*
6,000 Tons VDOT II Riprap (4,040 CY Maximum Shown on Drawings, at 107 pounds per CF)*

*Manufacturers calculated tonnage
Material Will Be Supplied from Barges Located at Gravelly Point.

One (1) Each Cat 322 Model #L.R. Long Reach Excavator
One (1) Each Six (6) Sectional Barge with (2) Spuds and (2) Spudwells
South Capital Street Location for Storage of Boats
One (1) Boat Slip at Columbia Island Is Expected to Be Provided by the Owner. If the Slip Is Provided, A-J Marine Will Have Use of the Slip.
Utility Mark-Out and Notification will be Performed by General Contractor (All clear at Piers, Ticket #6422405. All utilities are aerial and on bridge only.)

Peter 10-24-06
JDN 10-24-06

Page 2 of 5

All work must be in compliance with Contract Documents for Washington Metropolitan Area Transit Authority, Contract No. FN3031, Scour Countermeasure Installation for Potomac River Metrorail Bridge, Piers District of Columbia:

      Section 2, Appendix D - Wage Rates, Page 227 to Page 245

      Section 3, Technical Provisions
      204 Grading Excavating and Backfilling, Page 263 to Page 273
      226 River Water and Sediment, Page 297 AM 01 to Page 301

Insurance certificate in compliance with WMATA Contract requirements at Page 172 to Page 174.

Contract Drawings:

      Contract No. FN3031, Drawing No. GN-01 R1
      Contract No. FN3031, Drawing No. PR-1
      Contract No. FN3031, Drawing No. PR-2
      Contract No. FN3031, Drawing No. PR-3
      Contract No. FN3031, Drawing No. PR-4
      Contract No. FN3031, Drawing No. PR-5

Reference Drawings:

Collins Engineers, Inc., Underwater Bridge Inspection WMATA Figures 1-6
As-Built Drawings, L'Enfant - Pentagon River Crossing

PcK 10-24-06
JWW. 10-24-06

Page 3 of 5



## A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel:~(410) 592-8157 • Fax (410) 592-8158

*The following addendum is made part of this agreement between the general contractor (Corfu Contractors, Inc.) and the subcontractor ( A-J Marine, Inc.). Addendum to contract No. FN3031, Scour Counter Measures Installation for the Potomac River Metrorail Bridge Piers District of Columbia*
*\*Price does not include towing to and from Galesville.*
*\*Price does not include fuel for equipment.*
*\* Price includes one mobilization and demobilization.*
*\*Permits are the responsibility of others*
*\*Turbidity curtain 4' to 6' in depth will be furnished at no charge as agreed however, Corfu has ordered heavier duty and deeper curtain which will be forfeited to A-J Marine, Inc. at the completion of the project.*
*\* Installation, maintenance and removal of the curtain is the responsibility of others.*
*\* A-J Marine, Inc. is to provide mechanical dredging and Placement of stone. A-J Marine will supply the labor and equipment listed below at the rates quoted. Excavation is for non -hazardous material only.*
*\* Rock excavation and obstructions are not included.*
*\* Corfu will supply all materials, dredge barges, rock barges, long reach excavator, moorings, sectional barges, spuds, spud wells, fuel tanks, fuel, personnel boat, one boat slip or fees for one boat slip for A-J Marine's vessel @ Columbia Island Marina.*
*\* Any additional insurance requirements above what is in place will be passed thru to the general contractor.*
*\*All excavation will be done mechanically by clamshell or excavator. If open excavation needs to be maintained this will be at additional expense. We are providing excavation and rock placement services with personnel and equipment.*
*\* Installation of the fabric is to be done by the general contractor. We will assist with equipment if necessary.*
*\*Inspection of any kind is not included.*
*\* Disposal of the dredge spoil is to be done by others.*
*\* Moving of the material barges is to be done by others.*
*\*Corfu Contractors, Inc. has verified the working heights under the bridges to be a minimum of 28' around the piers and 22' at the railroad bridge.*
*\*The location, protection, marking, shoring or repairs of utilities are the sole responsibility of the General Contractor*
*\* Subcontractor will make every effort to complete the project by the completion date however subcontractor is allowed as many days as the general contractor is allowed in the contract starting from date of mobilization. Weather may increase this time due to the winter months.*

10-24-06
PK / JDN
10-24-06

4of5  P.K
JDN.  10/24/06

| | |
|---|---|
| **Equipment Monthly rates based on 40 hr. work week | $5,600.00 |
| 7 --sectionals @ $800.00 = | $450.00 |
| 2--Spuds and spud wells | $11,500.00 |
| 1-Link belt crawler 75 ton | $2,600.00 |
| 1 ½ yd. Clam bucket | $1,250.00 |
| ¾ yd rock grapple | |
| | $4,000.00 |
| 5 -sectionals @800.00= | $450.00 |
| 2-Spuds and spudwells | $6,500.00 |
| 1-Caterpillar excavator with hydraulic thumb | $2,400.00 |
| 20-Timber mats | $4,800.00 |
| 1-Pushboat | $1,200.00 |
| 1-anchor | $2,200.00 |
| 2-trucks @ $1,100.00ea. | $1,800.00 |
| 1- skid steer loader      if needed | $1,200.00 |
| 1-rock box      if needed | |
| | $45,450.00 |
| Sub Total | $2,272.50 |
| Tax      at 5% | |

| | | |
|---|---|---|
| **Labor for 8 hr. day | | $8,015.00 |
| Crane operator 8hrs. @ $30.36 (45.54) x22 days | | $7,894.00 |
| Excavator operator 8hrs. @ $29.90 (44.85) x22 days | | $9,240.00 |
| Supervisor      8hrs. @ $35.00 ($50.00) x 22days | | $5,712.96 |
| Laborer      8hrs.@ $21.64 ($32.46) x22 days | | |
| (Does not include any O.T. or weekend work) | | |
| | | $12,500.00 |
| Company mo. Overhead | | |
| | | $85,371.00 |
| Total monthly | | |

| | |
|---|---|
| | $5,000.00 |
| Mobilization | $5,000.00 |
| Demobilization | |

The terms  above are accepted and made part of the contract as of October 16, 2006 and signed by both parties below. Both parties affirm that they are authorized to execute this agreement to be legally binding on behalf of the parties named above.

General Contractors signature _____ Date 10/24/06

Subcontractors Signature _____ Date 10/24/06

P.K. 10-24-06
J.D.N. 10-24-06

5of5



# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

November 7, 2006

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 102406                    Due Date 11/14/06
Mobilization/ setup of equipment on barges @ Galesville, MD

Mobilization                                    $5,000.00

TOTAL DUE THIS INVOICE                          $5,000.00

Exhibit B



# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

November 7, 2006

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 102406-1                     Due Date 11/23/06
October 24, 2006– November 23, 2006

| | |
|---|---:|
| 7 –sectionals @ $800.00 = | $5,600.00 |
| 2–Spuds and spud wells | $450.00 |
| 1–Link belt crawler 75 ton | $11,500.00 |
| 1 ½ yd. Clam bucket | $2,600.00 |
| ¾ yd rock grapple | $1,250.00 |
| | |
| 5 –sectionals @800.00= | $4,000.00 |
| 2–Spuds and spudwells | $450.00 |
| 1–Caterpillar excavator with hydraulic thumb | |
| $6,500.00 | |
| 20–Timber mats | $2,400.00 |
| 1–Pushboat | $4,800.00 |
| 1 carolina skiff | $00.00 |
| 1–anchor | $00.00 |
| 2–trucks @ $1,100.00ea. | $1,100.00 |
| | |
| Sub Total | $40,650.00 |
| Tax | $2,032.50 |
| | |
| **Labor to be billed separately on a weekly basis | |
| Company mo. Overhead | $12,500.00 |

| | |
|---|---:|
| TOTAL DUE THIS INVOICE | $55,182.50 |

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane ▪ Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 ▪ Fax (410) 592-8158

November 27, 2006

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 120106                            Due Date 12/01/06 Upon Receipt
November 02, 2006– December 1, 2006

| | |
|---|---|
| *Crane operator 8hrs. @ $30.36 (45.54) x22 days* | *$8,015.00* |
| *Excavator operator 8hrs. @ $29.90 (44.85) x22 days* | *$7,894.00* |
| *Supervisor   8hrs. @ $35.00 ($50.00) x 22days* | *$9,240.00* |
| *Total* | *$25,149.00* |

TOTAL DUE THIS INVOICE                                    $25,149.00

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

November 27, 2006

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 112706-1                     Due Date 12/23/06
November 24, 2006- December 23, 2006

| | |
|---|---|
| 7 -sectionals @ $800.00 = | $5,600.00 |
| 2--Spuds and spud wells | $450.00 |
| 1-Link belt crawler 75 ton | $11,500.00 |
| 1 ½ yd. Clam bucket | $2,600.00 |
| ¾ yd rock grapple | $1,250.00 |
| | |
| 5 -sectionals @800.00= | $4,000.00 |
| 2-Spuds and spudwells | $450.00 |
| 1-Caterpillar excavator with hydraulic thumb $6,500.00 | |
| 20-Timber mats | $2,400.00 |
| 1-Pushboat | $4,800.00 |
| 1 carolina skiff | $00.00 |
| 1-anchor | $00.00 |
| 2-trucks @ $1,100.00ea. | $1,100.00 |

| | |
|---|---|
| Sub Total | $40,650.00 |
| Tax | $2,032.50 |

**Labor to be billed separately on a weekly basis
Company mo. Overhead                            $12,500.00

| | |
|---|---|
| TOTAL DUE THIS INVOICE | $55,182.50 |

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

January 2, 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 010207                          Due Date: Upon Receipt
December 02, 2006- January 2, 2007

| | |
|---|---|
| Crane operator 8hrs. @ $30.36 (45.54) x22 days | $8,015.00 |
| Excavator operator 8hrs. @ $29.90 (44.85) x22 days | $7,894.00 |
| Supervisor      8hrs. @ $35.00 ($50.00) x 22days | $9,240.00 |
| Total | $25,149.00 |

TOTAL DUE THIS INVOICE                            $25,149.00

 **A-J MARINE, INC.**

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

January 16, 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 011607                    Due Date: upon receipt
December 24, 2006- January 23, 2007

| | |
|---|---|
| 7 -sectionals @ $800.00 = | $5,600.00 |
| 2--Spuds and spud wells | $450.00 |
| 1-Link belt crawler 75 ton | $11,500.00 |
| 1 ½ yd. Clam bucket | $2,600.00 |
| ¾ yd rock grapple | $1,250.00 |
| | |
| 5 -sectionals @800.00= | $4,000.00 |
| 2-Spuds and spudwells | $450.00 |
| 1-Caterpillar excavator with hydraulic thumb | |
| $6,500.00 | |
| 20-Timber mats | $2,400.00 |
| 1-Pushboat | $4,800.00 |
| 1 carolina skiff | $00.00 |
| 1-anchor | $00.00 |
| 2-trucks @ $1,100.00ea. | $1,100.00 |

| | |
|---|---|
| Sub Total | $40,650.00 |
| Tax | $2,032.50 |

**Labor to be billed separately on a weekly basis*
Company mo. Overhead                $12,500.00

| | |
|---|---|
| TOTAL DUE THIS INVOICE | $55,182.50 |

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

January 16, 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 011607-1                    Due Date: Upon Receipt
January 03, 2006- January 16, 2007

| | |
|---|---|
| Crane operator 8hrs. @ $30.36 (45.54) x10 days | $3,643.00 |
| Excavator operator 8hrs. @ $29.90 (44.85) x10 days | $2,392.00 |
| Supervisor     8hrs. @ $35.00 ($50.00) x 10days | $4,000.00 |
| Total | $10,035.00 |

TOTAL DUE THIS INVOICE                    $10,035.00

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel; (410) 592-8157 • Fax (410) 592-8158

January , 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 0107                    Due Date: upon receipt
Towing of barges from Washington D.C. to Galesville, MD          $12,500.00
Demobilization of equipment off barges @ Galesville, MD

Demobilization                                          $5,000.00


TOTAL DUE THIS INVOICE                                  $17,500.00

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

February 13 , 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 021307                    Due Date: upon receipt

| | |
|---|---|
| 200' turbidity curtain rental@ $5.00/ ft./ mo. November, 2006 | $1,000.00 |
| 200' turbidity curtain rental@ $5.00/ ft./ mo. December, 2006 | $1,000.00 |
| 200' turbidity curtain rental@ $5.00/ ft./ mo. January, 2007 | $1,000.00 |
| 200' turbidity curtain rental@ $5.00/ ft./ mo. February, 2007 | $1,000.00 |

TOTAL DUE THIS INVOICE                    $4,000.00

# A-J MARINE, INC.

MARINE CONSTRUCTION & UNDERWATER SERVICES

11101 Cedar Lane • Kingsville, MD 21087
Kingsville, Maryland 21087
Tel: (410) 592-8157 • Fax (410) 592-8158

March 12 , 2007

Corfu Contractors, Inc.
2405 Oakmont Court
Oakton, VA 22124-1000

INVOICE # 031207                    Due Date: upon receipt
200' turbidity curtain rental@ $5.00/ ft./ mo. March, 2007            $1,000.00    –


TOTAL DUE THIS INVOICE                          $1,000.00

## Washington Metropolitan Area Transit Authority

Contract No. FN3031        Construction Contract        IFB-FN3031/JDC Rebid

**PAYMENT BOND**    Bond Number 3-855-111

Contract No. FN3031/Rebid    **Contract Date:** January 10th, 2006

**Penal Sum of Bond:** 40% of the Contract Price  **Date Bond Executed:** January 24th, 2006

KNOW ALL MEN BY THESE PRESENTS, that we, the Principal and Surety(ies) hereto, are firmly bound to the Washington Metropolitan Area Transit Authority (hereinafter called the Authority) in the above penal sum for the payment of which we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally; Provided, that, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us, and for all other purposes each Surety binds itself, jointly and severally with the Principal, for the payment of such sum only as set forth opposite the name of such Surety, but if no limit of liability is indicated, the limit of liability shall be the full amount of the penal sum.

THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the Principal entered into the contract identified above:

NOW, THEREFORE, if the Principal shall promptly make payment to all claimants as hereinafter defined supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the Surety(ies) being hereby waived, then the above obligation shall be void and of no effect, otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1.  A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the CONTRACT.

2.  The above-named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due the claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3.  No suit or action shall be commenced hereunder by any claimant:

    a.   Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any of the Principal within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal at any place where he maintains an office or conducts business, or his residence or such notice shall be served in any manner in which legal process may be served in the state or District of Columbia in which the aforesaid project is located, save that such service need not be made by a public officer.

    b.   After the expiration of one (1) year following the date of final settlement of said CONTRACT, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

    c.   Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

79

Exhibit C

## Washington Metropolitan Area Transit Authority

**Contract No. FN3031**  
**Construction Contract**     IFB-FN3031/JDC Rebid  
PAYMENT BOND  page 2  
Bond Number 3-655-111

IN WITNESS WHEREOF, the Principal and Surety(ies) have executed this payment bond and have affixed their seals on the date set forth above.

### Principal(s)

| | | |
|---|---|---|
| 1. | Firm Name and Address: Corfu Contractors, Inc. 2720 Bowling Green Dr. | Corporate Seal |
| | Signature: | Vienna, VA 22180-7033 | |
| | Christos Kollas, President        State of Inc.:  Virginia | |
| 2. | Firm Name and Address: | |
| | Signature: | Corporate Seal |
| | Name and Title:                          State of Inc.: | |
| 3. | Firm Name and Address: | |
| | Signature: | Corporate Seal |
| | Name and Title:                          State of Inc.: | |

### Corporate Surety(ies)

| | | | |
|---|---|---|---|
| Surety A | Surety Name and Address: The Ohio Casualty Insurance Company Hamilton, Ohio | Liability Limit $37,190,000 | (Seal) |
| | Signature: | | |
| | Name and Title: Nancy W. Vipond, Attorney-in-fact   State of Inc.: Ohio | | |
| Surety B | Surety Name and Address: | Liability Limit $ | (Seal) |
| | Signature: | | |
| | Name and Title:                          State of Inc.: | | |
| Surety C | Surety Name and Address: | Liability Limit $ | (Seal) |
| | Signature: | | |
| | Name and Title:                          State of Inc.: | | |

*Attach additional pages as needed.*

### Instructions

1. This form is authorized for use in connection with contracts for construction work or the furnishing of supplies and services.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of this form. The bond shall be signed by an authorized person. Where such person is signing in a representative capacity (e.g., an attorney-in-fact) but is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved, evidence of his authority must be furnished.

3. Corporation executing the bond as sureties must be among those appearing on the Treasury Department's list of approved sureties and must be acting within the limitations set forth therein. Where more than a single corporate surety is involved, their names and addresses (city and State) shall be inserted in the spaces (Surety A, Surety B, etc.) headed "Corporate Surety(ies)".

4. Corporations executing the bond shall affix their corporate seals.

5. The name of each person signing this payment bond should be typed in the space provided.

6. The date this Bond is executed must be later than the contract execution date.

80

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made this ___EIGHTH___ day of ___MARCH___ A.D. _2005_ by and between _____ CORFU CONTRACTORS, INC. hereinafter called the Contractor, and __BRICKWOOD CONTRACTORS, INC.__ hereinafter called the Subcontractor.

For the consideration hereinafter named, the Subcontractor agrees with the Contractor, as follows:

**ARTICLE 1 WORK:** _All Work in the Owner's Contract No. FN3031/JDC, Scour Counterermeasure Installation_

At: _Potomac River Metro Rail Bridge Piers_
ADDRESS

For: _Washington Metropolitan Area Service Authority, 600 Fifth Street, NW., Washington, DC 20001_
OWNER OR OWNERS

according to the general conditions of the contract, as per the drawings and specifications, and amendments and/or changes to either (details thereof to be supplied as needed) prepared and identified by _Washington Metropolitan Area Service Authority_ Owner/Architect, and to the full satisfaction of said Owner/Architect.

**ARTICLE 2. TIME:** The Subcontractor agrees to promptly begin work as soon as notified by the Contractor, and to complete the work as follows: _____In Accordance with Contract Schedules_____

**ARTICLE 3. EXTRAS:** No deviations from the work specified in the contract will be permitted or paid for unless a written extra work or change order is first agreed upon and signed as required. _Subcontractor will receive 80% of each Contract Change Order_.

**ARTICLE 4. ASSIGNMENT:** No assignment of this subcontract agreement is permitted without prior written permission from the Contractor.

**ARTICLE 5. INSURANCE:** The Subcontractor agrees to obtain and pay for the following insurance coverages: Workmen's Compensation, Public Liability, Property Damage, and any other insurance coverage which may be necessary as required by the Owner, Contractor, or State Law, Per Contract Specifications and County Requirements.

**ARTICLE 6. TAXES:** The Subcontractor agrees to pay any and all Federal, State, or Local Taxes which are, or may be, assessed upon the material and labor which he furnishes under the contract.

IN CONSIDERATION WHEREOF, the Contractor agrees that he will pay the Subcontractor, in ___Progress___ payments, the sum of _One Million Four Hundred Fifteen Thousand, One Hundred Twenty-Six 00/100_ Dollars ($1,415,126.00) for materials and work, said amount to be paid as follows: _per contract specified_ per cent (------%) of all labor and material which has been fixed in place by the Subcontractor, to be paid on or about the _Monthly_ of the following month, except the final payment, which the Contractor shall pay to the Subcontractor within _14_ days after the Subcontractor shall have completed his work to the full satisfaction of the Architect or Owner.

The Contractor and the Subcontractor for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

IN WITNESS WHEREOF, they have executed this agreement the day and year first above written.

_____
WITNESS

**BRICKWOOD CONTRACTORS, INC.**
SUBCONTRACTOR

BY: Peter Kalos, President
2701-023469A
STATE LICENSE NO.:

_____
WITNESS

**CORFU CONTRACTORS, INC.**
CONTRACTOR

BY: Christos Kollas, President

Tops Form No. 3461–Revised
Litho in U.S.A.

**Page 1 of 1**

EXHIBIT
2

ALL-STATE LEGAL®

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

A-J MARINE, INC.                    *

       Plaintiff,                  *

v.                                  *        Case No. 071642

CORFU CONTRACTORS, INC.             *

       Defendant.                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF MOTION TO AMEND ANSWER AND
COUNTERCLAIM AND ADD THIRD PARTY DEFENDANT**

I.        INTRODUCTION / STATEMENT OF FACTS

On August 14, 2007, A-J Marine, Inc. ("AJ Marine") filed a Complaint in the
Superior Court of the District of Columbia alleging breach of contract against defendant
Corfu Contractors, Inc. and alleging a bond claim against the Ohio Casualty Insurance
Company.  AJ Marine alleges that Corfu breached a subcontract agreement dated October
24, 2006 by failing to pay $253,380.50 owed to AJ Marine for work allegedly performed
on a project known as the Washington Metropolitan Area Service Authority, Contract
No. FN3031, "Scour Countermeasure Installation for Potomac River Metrorail Bridge,
Piers District of Columbia." ("the Project").  Corfu is the general contractor on the
Project.  Corfu filed an Answer admitting that it entered into subcontract with AJ Marine
by denying that it had breached that subcontract.  Corfu also filed a Counterclaim against
AJ Marine alleging that AJ Marine breached the subcontract.

The information contained in the Answer and Counterclaim was provided to
counsel by Veron Lee Kalos.  Until recently, Kalos was the point of contract for several

Corfu projects, including the Project.  Kalos was a personal friend of Chris Kollas, Corfu's president, and worked in the office as a favor to him.

Kalos and her husband, Peter, are the owners and officers of Brickwood Contractors, Inc.  As a favor to the Kaloses, Corfu agreed to become the general contractor on certain projects which would then be subcontracted to Brickwood. Brickwood was responsible for running these projects and assumed responsibility for hiring subcontractors necessary to complete the work required for the projects.  One such project was the Project.  Although Peter Kalos was designated as Corfu's project manager, after the subcontract was executed Corfu believed that Brickwood was running the project and that Brickwood had entered into subcontracts with various companies related to the Project.  In actuality, Peter Kalos was signing contracts purportedly on behalf of Corfu, not Brickwood.  To add to the confusion, anyone calling Corfu regarding the Project, including counsel, would be directed to Veron Lee Kalos.

In late 2007 / early 2008 a dispute arose between the Kaloses and Corfu which led to Corfu filing a lawsuit against Brickwood and the Kaloses in the Circuit Court of Fairfax County.  As a result of this dispute, Kalos no longer works in the Corfu office. When she left, she took virtually all documents related to the Project.  After Kalos' departure, Kallos became personally involved with the Project and in this litigation.  Only then, did he learn that Peter Kalos had executed subcontracts for the Project, including the one with AJ Marine, as a Corfu representative.

Corfu requests leave to amend its answer and counterclaim to address these newly discovered facts.  Specifically, Corfu requests leave to amend its Answer to deny that it executed a subcontract agreement with AJ Marine and to assert the affirmative defense of lack of privity of contract, and to amend its Counterclaim to conform with the amended

2

answer.  Corfu further requests that it be allowed to file a third party complaint against

Peter Kalos.


## II.    ARGUMENT

<u>A.</u>    <u>Motion to Amend Answer and Counterclaim</u>

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when

justice so requires."  "Rule 15(a) exists in order to give litigants the opportunity to fix

mistakes or omissions" and, like the other Federal Rules of Civil Procedure, its purpose is

"'to facilitate a proper decision on the merits.'"  <u>Dove v. Washington Metropolitan Area</u>

<u>Transit Authority</u>, 221 F.R.D. 246 (D.D.C. 2004) (quoting <u>Foman v. Davis</u>, 371 U.S. 178,

181-82 (1962).

Leave to amend should be granted "in the absence of undue delay, bad faith,

undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."

<u>Richardson v. United States</u>, 193 F.3d 545, 548-49 (D.C. Cir. 1999).    In deciding

whether to grant a motion for leave to amend, the most important factor to be considered

by the court is whether the nonmoving party will be prejudiced by the amendment.  <u>Id</u>.

Generally, delay alone is an insufficient ground to deny the motion unless it prejudices

the other party.  <u>Caribbean Board Sys., Ltd. v. Cable & Wireless P.L.C.</u>, 148 F.3d 1080,

1084 (D.C.Cir. 1998); <u>Atchinson v. District of Columbia</u>, 73 F.3d 418, 426 (D.C.Cir.

1996). However, mere harm to the nonmovant is not a sufficient reason to deny leave to

amend.  <u>Dove</u>, 221 F.R.D. at 248.  Rather the prejudice to the nonmovant must be

"undue."  "Undue prejudice" is a denial "'of the opportunity to present facts or evidence

which would have been offered had the amendment been timely.'"  <u>Id.</u> (quoting

<u>Foremost-McKesson, Inc. v. Islamic Republic of Iran</u>, 1988 WL 122568, at *4, 1988 U.S.

Dist. LEXIS 18522, at * 16 (D.D.C. 1988), aff'd, 905 F.2d 438 (D.C.Cir. 1990)).

Amendment should be allowed where it will not unduly increase discovery or delay trial,

and when the nonmovant cannot claim surprise.  Djourbachi v. Self, 240 F.R.D. 5, 13

(D.D.C. 2006) (citing Wright, Miller & Kane, *Federal Practice and Procedure* § 1487

(2d ed. 1990)).

    Justice requires that Corfu be given leave to amend its Answer.  The Answer

originally filed was based on incorrect information regarding the parties' relationship

provided by Veron Lee Kalos.  Although she was working in the Corfu office, Kalos is an

officer of Brickwood Contractors, Inc., the party who actually contracted with AJ Marine.

She and her husband, Brickwood's president, provided false information to Corfu's

owners regarding the subcontracts on the Project, and Peter Kalos signed the AJ Marine

as an agent of Corfu's but without their knowledge or consent.  Because she also worked

in the office and was the contact person for the Project, Corfu did not discover these facts

until disputes arose between Corfu and Brickwood and the Kaloses.  Unfortunately, this

did not occur until after Corfu had filed its Answer and Counterclaim based on the

information provided by Kalos.

    AJ Marine will not be unduly prejudiced if leave to amend is granted.   AJ Marine

cannot claim surprise as the facts supporting the motion to amend were revealed during

depositions in early April.  Although the scheduling order states that all discovery will be

completed by June 30, 2008, AJ Marine had the opportunity after learning of these new

facts to issue further discovery.  Additionally, the remaining allegations and claims in the

case, *i.e.* whether AJ Marine actually performed work on the Project, whether AJ Marine

had the proper insurance coverage, and whether AJ Marine is a proper claimant under the

payment bond, remain the same.  Finally, no trial date has been set; therefore the amendment will not delay the trial.

B.    Motion to File Third Party Complaint

Fed. Rule Civ. P. 14(a) permits a defendant to file a third party complaint against a third party who may be liable to the defendant for all or part of the plaintiff's original claim.  Its purpose is to "avoid circuitry of action" which arises when a defendant has been found liable to plaintiff and then must file a separate action against a third party. Hood v. Security Bank of Huntington, 562 F. Supp. 749, 751 (D.C. Ohio 1983) (quoting Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander, 414 F.2d 143, 146 (6th Cir. 1969).  The joinder of the third party defendant does not assert a claim between the original plaintiff and the third party defendant; "[t]herefore, the disposition of the third party complaint only effects the rights as between the original defendant and the third party defendant."  Frankel v. Back, 37 F.R.D. 545, 547 (E.D.Pa. 1965).  If the original plaintiff does not prevail against the original defendant, the original defendant has no claim against the third party defendant.  Hood v, 562 F. Supp. at 751.

A defendant who wishes to file a third party complaint under Rule 14 more than ten days after serving its answer to the plaintiff's initial complaint must first obtain leave from the Court.  Fed. Rule Civ.P. 14(a).  Whether to grant defendant's request to file a third party complaint is within the court's discretion; however, that discretion should be exercised in order effect the purpose of Rule 14.  Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority, 2006 WL 1102767 (D.D.C.).  The Court should also consider (1) the potential prejudice to plaintiff if the motion is granted (2) whether the impleader will add new and complicated issues and/or

5

delay trial (3) whether defendant unreasonably delayed filing the third party complaint, and (4) whether the third party complaint states a claim.  Id.  "'[I]f the claim is a proper third-party action and will not prejudice the other parties to the litigation, there is no reason to deny an application under Rule 14 (a).'"  Id. (quoting Wright & Miller, *Federal Practice and Procedure* § 1443 (2d ed. 1990).

The claim Corfu asserts in the third party complaint is a proper third party action. AJ Marine has alleged a claim of breach of contract against Corfu.  The contract which AJ Marine alleges was breached by Corfu was signed by Peter Kalos.  Kalos did not have the authority to contract for Corfu and, until recently, Corfu was not aware that he had executed contracts in its name.  Should Corfu be found liable for breaching the contract executed by Peter Kalos and the subject matter of which Corfu had subcontracted to Brickwood Contractors, Inc., Kalos' company, then Peter Kalos is liable to Corfu for any and all damages awarded to AJ Marine.  This is the only claim asserted in the third party complaint and is the type contemplated by Rule 14.  Allowing it to be included in the present case will promote judicial efficiency by eliminating any future action by Corfu against Peter Kalos in the event that Corfu is found liable to AJ Marine.

AJ Marine will not be prejudiced by the third party complaint.  The third party complaint has no effect on its case against Corfu.  The third party complaint becomes relevant if, and only if, AJ Marine prevails against Corfu.  It imposes no additional burden on AJ Marine and does not present any complicated issues which would require additional discovery.  Further, the third party complaint will not delay the trial as no trial date has been set.

III.    CONCLUSION

For the foregoing reasons, and for the reasons stated in the Motion, Corfu

Contractors, Inc, requests that the Court grant its motion to file an amended answer and

counterclaim and to add Peter Kalos as a third party defendant.


Respectfully submitted,


/s/ Stephen J. Annino_____
Stephen J. Annino, (DC Bar 390252)
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax
*Counsel for Corfu Contractors, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this pleading was sent on the 5th

day of June, 2008 via first class, postage prepaid mail to the following:


Christopher L. Grant, Esq.
1250 Connecticut Ave, NW
Suite 200
Washington, DC 20036

Cynthia E. Rodgers-Waire, Esq.
Nicole Velasquez, Esq.
Whiteford Taylor & Preston, LLP
7 St. Paul Street
Baltimore, Maryland 21202


/s/ Stephen J. Annino_____
Stephen J. Annino


P:\Docs\Corfu Contractors\AJ Marine\Pleadings\MemoMotiontoAmend.doc