IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| A-J MARINE, INC. | * | |
|     Plaintiff, | * | |
| v. | * | Case No. 071642 |
| CORFU CONTRACTORS, INC. | * | |
|     Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED ANSWER OF CORFU CONTRACTORS, INC.

Corfu Contractors, Inc., ("Corfu"), by its undersigned counsel, files its Amended Answer to the Complaint filed against it by A-J Marine, Inc. ("AJ Marine") and states in response thereto as follows:

1. Corfu lacks sufficient knowledge or information to form a belief as to the truth or accuracy of the allegations in paragraph 1 and therefore denies the same.

2. Corfu admits the allegations in the first sentence of paragraph 2 of the Complaint and denies the remaining allegations.

3. Corfu admits the allegations of paragraph 3 of the Complaint.

4. Corfu admits that this action was originally filed in Superior Court for the District of Columbia and denies the remaining allegations of paragraph 4.

5. The responses of paragraphs 1 through 4 of the Complaints set forth hereinabove are incorporated herein by reference, as Corfu's response to the allegation of paragraph 5.

6. The allegations of paragraph 6 are denied.

7. The allegations of paragraph 7 are denied.

8. The allegations of paragraph 8 are denied.

9. The allegations of paragraph 9 are denied.

10. The allegations of paragraph 10 are denied.

11. The allegations of paragraph 11 are denied.

12. The allegations of paragraph 12 are denied.

13. The responses of paragraph 1 through 12 set forth hereinabove are incorporated herein by reference as Corfu's response to paragraph 13.

14. The allegations in the first 3 sentences of paragraph 14 are admitted. The allegations in the last sentence of paragraph 14 are denied.

15. The allegations set forth in the first 2 sentences of paragraph 15 are admitted. The remaining allegations of paragraph 15 are denied.

16. The allegations of paragraph 16 are denied.

17. Any allegations specific of the Complaint not specifically admitted hereinabove are denied.

## AFFIRMATIVE DEFENSES

18. There is no privity of contract between Corfu and A.J. Marine.

19. AJ Marine's claims are barred in whole or in part by the terms of the payment bond provided in this action.

20. AJ Marine's claims have been waived or AJ Marine is otherwise estopped from making the claims it asserts in this action.

21. The claims of AJ Marine are barred by its failure to mitigate damages.

22. The contract upon which AJ Marine seeks to recover is void and/or is unenforceable as a result of a mutual mistake of fact.

AND NOW having fully responded to the Complaint the undersigned prays that the same be dismissed with an award to it of costs on this behalf expended.

### AMENDED COUNTERCLAIM OF CORFU CONTRACTORS, INC.

Corfu Contractors, Inc., ("Corfu"), by its undersigned counsel, files this Amended Counterclaim against A-J Marine, Inc. ("AJ Marine") and in support thereof states as follows:

1. Pursuant to a subcontract agreement, AJ Marine agreed to supply certain work and material in connection with a project for the Washington Metropolitan Area Transit Authority ("WMATA"), Contract No. FN3031, scour-counter measure installation for Potomac River Metro Rail Bridge, Piers District of Columbia (the "Project"). A copy of the subcontract agreement is attached to the Complaint filed by AJ Marine in this matter (hereafter "the Subcontract Agreement").

2. Corfu was the general contractor on the Project and subcontracted all of its work on the Project to Brickwood Contractors, Inc.

3. Brickwood was responsible for paying any and all subcontractors necessary to complete work on the Project.

4. Brickwood's president, Peter Kalos, executed the subcontract with AJ Marine. Although the subcontract indicates that he is signing on behalf of Corfu, Kalos did not have that authority.

5. However, to the extent that it is determined that Corfu entered into the subcontract agreement with AJ Marine, AJ Marine has breached that subcontract.

6. Pursuant to the terms of the subcontract agreement, the work of AJ Marine was to include providing an "insurance certificate in compliance with WMATA contract requirements at page 172 to 174." A true copy of the WMATA contract requirements for insurance referenced in the subcontract agreement is attached hereto as **Exhibit 1.**

7. The subcontract agreement further provided in Art. 5 that "the subcontractor agrees to obtain and pay for the following insurance overages: worker man's compensation, public liability, property damage, and any other insurance coverage which may be necessary as required by the owner, contractor, or state law per contract specifications and county requirements.

8. Prior to the commencement of performance of AJ Marine, AJ Marine was required to submit evidence of appropriate insurance as required by the terms of its contract and Prime Contract.

9. AJ Marine repeatedly failed to provide the necessary evidence of insurance coverage, even after notice and demand by Brickwood, Corfu's subcontractor. AJ Marine failed after notice and demand to provide the necessary insurance coverage and subsequently demobilized from the project and refused to perform any work on the project.

10. At the time AJ Marine demobilized, it had not performed any work which was of benefit to the project.

11. As a result of AJ Marine's failure and refusal to perform, Corfu incurred significant cost and expense by reason of the need to re-procure a subcontractor to perform the work which AJ Marine was required to perform, additional cost and expense arising out of AJ Marine's delay and disruption of Corfu's work on the project and

additionally cost and expense involving additional mobilizations to the project which were not contemplated.

12.    To the extent that the subcontract is determined to be binding on Corfu, AJ Marine's actions were a breach of the contract between the parties and as a result of that breach Corfu has sustained damages not yet known but expected to at least $600,000.00

WHEREFORE, on account of the foregoing Corfu Contractors, Inc. requests that this Court enter judgment against AJ Marine, Inc. in the sum of $600,000.00 together with interest thereon and the costs of these proceedings.

Respectfully submitted,

_____
Stephen J. Annino, (DC Bar 390252)
KASIMER & ANNINO, P.C.
7653 Leesburg Pike
Falls Church, Virginia 22043
(703) 893-3914 Phone
(703) 893-6944 Fax
*Counsel for Corfu Contractors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading was sent on the 5th day of June, 2008 via first class, postage prepaid mail to the following:

Christopher L. Grant, Esq.
1250 Connecticut Ave, NW
Suite 200
Washington, DC 20036

Cynthia E. Rodgers-Waire, Esq.
Nicole Velasquez, Esq.
Whiteford Taylor & Preston, LLP
7 St. Paul Street
Baltimore, Maryland 21202

_____
Stephen J. Annino

P:\Docs\Corfu Contractors\AJ Marine\Pleadings\amended answer and counterclaim.doc

of the Contract. Maximum primary voltage shall be 600 volts, unless otherwise approved. Lighting equipment shall be of the type and quantity needed to provide illumination of all project areas. Materials for and installation of temporary services shall comply with OSHA requirements and with the minimum requirements of the technical specifications.

### 2.13 INDEMNIFICATION AND INSURANCE

#### 2.13.1 INDEMNIFICATION

The Contractor will save and keep harmless and indemnify the Authority against any and all liability claims, and the cost of whatsoever kind and nature (including legal expenses) arising or alleged to have arisen from an injury, including bodily injury to or death of person or persons, and for loss or damage occurring in connection with this Contract, and or any acts in connection with activities to be performed under this contract resulting in whole or in part from the acts, errors or omissions of the Contractor, any subcontractor, employee, agent or representative of the contractor.



#### 2.13.2 INSURANCE
<u>The Contractor will provide evidence of its commercial insurance coverage(s), prior to notice to proceed being given, for the following exposures:</u>

   A.   **Workers' Compensation:** Policy complying with the requirements of the statutes of the jurisdiction(s) in which the work will be performed, and if there is any exposure to any of the Contractor's subcontractor personnel with the U.S. Longshoremen's and Harbor Workers' Act, Jones Act or Admiralty Laws and the Federal Employers' Liability Act. The coverage under such an insurance policy or policies shall have not less than:

Worker's Compensation:  STATUTORY

Employers' Liability :   Each Accident  **$1,000,000**
                         Disease Policy Limit:  **$1,000,000**
                         Disease - Each Employee  **$1,000,000**

   B.   **Commercial General Liability Insurance**: An insurance policy covering the liability of the Contractor for all work or operations under or in connection with this referenced Contract and all obligations assumed by the Contractor under this Contract. Products Liability and Completed Operations and Contractual Liability must be included, in addition to coverage for explosion, collapse and underground hazards, wherever required.

The coverage under such an insurance policy or policies shall have limits not less than:

Bodily Injury and Property Damage Liability $1,000,000 / 2,000,000 (per occurrence / aggregate)

Premises Medical Payments         $5,000
Fire Legal Liability              $1,000,000
Personal & Advertising Injury     $1,000,000


EXHIBIT 1

Case 1:07-cv-01642-RMC   Document 21   Filed 07/18/2008   Page 8 of 9

| Washington Metropolitan Area Transit Authority | |  |
|---|---|---|
| Contract FN3031 Rebid | Construction Contract | IFB FN3031R/JC |

WMATA must be included as an additional insured under the Commercial General Liability insurance with respect to all activities under the Contract.

  C.  **Automobile Liability Insurance** : An insurance policy covering the use of all owned, non-owned, hired, rented or leased vehicles bearing, or under the circumstances which they are being used, required by the Motor Vehicle Laws of The District of Columbia, Maryland or Virginia, to bear license plates and not covered under the Contractor's aforementioned Commercial General Liability Insurance.

The coverage under such policy or policies shall limits not less than:

    Bodily Injury and Property Damage Liability
    $2,000,000 Combined Single Limit

WMATA must be included as an additional insured under the coverage for Automobile Liability Insurance with respect to all work performed under this contract.

2.13.3 SPECIAL PROVISIONS FOR INSURANCE (revised 01/01/2001):
  A.  The contractor shall forward to the Contracting Officer for approval a certificate or certificates, issued by the insured(s), of the insurance required under the foregoing provisions, including special endorsements. Such certificate(s) shall be in a form satisfactory to WMATA and shall list the various coverages and limits. Insurance companies providing the coverage must be acceptable to WMATA, rated by A.M. Best and carry at least an "A" rating. In addition to any provisions herein before required; a provision of such insurance policies shall not be changed or cancelled and they will be automatically renewed upon expiration and continued in full force and effect until final acceptance by WMATA of all work covered by the contract, unless WMATA is given thirty (30) days written notice before any change or cancellation is made effective. The Contractor shall directly furnish the Contracting Officer with a certified copy of each insurance policy upon request.

  B.  All insurance shall be procured from insurance or indemnity companies acceptable to WMATA and licensed and authorized to conduct business in the District of Columbia, State of Maryland and Commonwealth of Virginia. WMATA approval or failure to disapprove insurance furnished by the Contractor shall not release the Contractor of full responsibility for liability for damage and accidents.

  C.  If at any time the above required insurance policies should be cancelled, terminated or modified so that the insurance is not in full-force and effect as required herein the Contracting Officer may terminate this contract for default or obtain insurance coverage equal to that required herein, the full cost of which shall be charged to the Contractor and deducted from any payments due the Contractor.

  D.  The Contractor shall require each subcontractor, at all tiers to provide evidence of insurance coverage specified herein and such evidence of coverage shall be

Case 1:07-cv-01642-RMC   Document 21   Filed 07/18/2008   Page 9 of 9

| Contract FN3031 Rebid | Washington Metropolitan Area Transit Authority<br>Construction Contract | IFB FN3031R/JC |
|---|---|---|

provided to the Contractor prior to commencement of work. Such coverage shall remain in full force and effect during the performance of work on this project.

E.  Any contract of insurance or indemnification naming WMATA, the United States of America, or any of the departments, agencies, administrators or authorities <u>as an insured</u> shall be endorsed to provide that the insurer will not contend in the event of any occurrence, accident, or claim that WMATA or the United States of America, et al, are not liable in tort by virtue of the fact of being governmental instrumental instrumentalities or public quasi-public bodies.

F.  In the event the required certificates of insurance as specified herein are not furnished within ten calendar days after the date of award of the contract, the Contracting Officer may issue the Notice to Proceed and contract time will start upon Contractor's receipt of Notice to Proceed. If the contract includes site work, the Contractor shall not be permitted to work at the site until all required insurance certificates have been received.

G.  Notice of Cancellation, nonrenewable or material change in coverage shall be provided to WMATA at least thirty (30) days prior to action. The words " endeavor to" and "but failure to" (to the end of sentence) are to be eliminated from the notice of Cancellation provision on standard ACORD certificates.

2.13.4  NOT USED

2.14  WORK ON RAILROAD PROPERTY - NOT USED

2.15  SAFETY / ENVIRONMENTAL REQUIREMENTS

A.  The Contractor shall be responsible for ensuring compliance with the most stringent provisions of the applicable occupational safety and health statutes and regulations of the District of Columbia, State of Maryland, Commonwealth of Virginia or political subdivision in which the work is being performed, and the Department of Labor OSHA standards. In addition, the Contractor must comply with the following documents: the WMATA Construction Safety and Environmental Manual; the WMATA System Safety Program Plan; the Metrorail Safety Rules and Procedures Handbook (for contracts in which work is performed on, or interfaces with the Metrorail System); and the Department Bus Service Employee Handbook (for contracts in which work is performed on, or interfaces with the Metrobus System or facilities); Consolidated Plan prepared by WMATA for each Bus Division and Rail Yard in order to minimize the potential for pollutant discharge to the environment; the National Institute for Occupational Safety and Health (NIOSH) guidelines; the American Conference of Governmental Industrial Hygienists (ACGIH) guidelines; the American National Standards Institute (ANSI) guidelines; and the U.S. Army Corps of Engineers Safety and Health Requirements Manual. The contractor shall also be responsible for compliance with applicable National Fire Protection Association (NFPA) Standards 13, 14, 24, 25 and 130. Further, the Contractor shall ensure that all methods of performing the work do not involve danger to the personnel employed thereon, the public, or private property, whether or not these methods are cited or indicated in the